**Case No. 24-5051**

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

———————————

VIEW, INC. F/K/A CF FINANCE ACQUISITION CORP. II; RAO MULPURI; VIDUL PRAKASH; HOWARD W. LUTNICK; PAUL PION; ALICE CHAN; ANSHU JAIN; ROBERT J. HOCHBERG; AND CHARLOTTE S. BLECHMAN,
*Defendant-Petitioners*,
*vs.*
STADIUM CAPITAL LLC;
DAVID SHERMAN,
*Plaintiff-Respondents.*

———————————

On Petition for Permission to Appeal an Order of the
United States District Court for the Northern District of California
No. 5:21-CV-06374-BLF
Hon. Beth Labson Freeman

———————————

## MOTION FOR LEAVE TO FILE REPLY IN SUPPORT OF PETITION
## FOR PERMISSION TO APPEAL UNDER 28 U.S.C. § 1292(b)

———————————

John W. Berry
John M. Gildersleeve
MUNGER, TOLLES & OLSON LLP
  350 South Grand Avenue
  50th Floor
  Los Angeles, CA 90071
  Telephone:  (213) 683-9100
  John.Berry@mto.com

*Counsel for Petitioners View, Inc.*
*(n/k/a View Operations, LLC and f/k/a*
*CF Finance Acquisition Corp. II) and*
*Rao Mulpuri*

Jeffrey L. Steinfeld
James P. Smith
WINSTON & STRAWN LLP
  333 South Grand Avenue
  38th Floor
  Los Angeles, CA 90071
  Telephone:  (213) 615-1700
  JLSteinfeld@winston.com

*Counsel for Petitioners Howard W.*
*Lutnick, Paul Pion, Alice Chan, Anshu*
*Jain, Robert J. Hochberg, and Charlotte*
*S. Blechman*

*Additional counsel listed on next page*

Anna Erickson White
Ryan Keats
MORRISON & FOERSTER LLP
 425 Market Street
 San Francisco, CA 94105
 Telephone:  (415) 268-7000
 RKeats@mofo.com

*Counsel for Petitioner Vidul Prakash*

**AMENDED CORPORATE DISCLOSURE STATEMENT**

Pursuant to Federal Rule of Appellate Procedure 26.1, Petitioner View, Inc. (n/k/a View Operations LLC and f/k/a CF Finance Acquisition Corp. II) states that View, Inc. has reconstituted itself into View Operations LLC, which is a wholly owned subsidiary of View TopCo LLC. No publicly held corporation holds 10% or more of the stock or membership interests in View Operations LLC.

## MOTION FOR LEAVE TO FILE REPLY

Defendant-Petitioners View, Inc. (n/k/a View Operations LLC and f/k/a CF Finance Acquisition Corp. II), Rao Mulpuri, Vidul Prakash, Howard W. Lutnick, Paul Pion, Alice Chan, Anshu Jain, Robert J. Hochberg, and Charlotte S. Blechman (collectively, "Petitioners") respectfully request leave to file a reply (attached as Exhibit A) in support of their petition for permission to appeal under 28 U.S.C. § 1292(b) (the "Petition").[1]  This Court routinely grants similar motions to file a reply in support of a Section 1292(b) petition.  *See, e.g.*, *Roth v. Foris Ventures, LLC*, No. 22-80093 (9th Cir. Oct. 24, 2022), Dkt. No. 6; *Senne v. Kansas City Royals Baseball Corp.*, No. 17-80088 (9th Cir. June 13, 2017), Dkt. No. 6.

A reply is warranted here because it will aid the Court in ruling on the Petition.  Lead Plaintiff's Answer and Conditional Cross-Petition (the "Answer") cites cases that Lead Plaintiff could have, but did not, cite in the district court briefing below.  Answer 5, 12-13, 20 (citing *ICTSI Oregon v. Int'l Longshore & Warehouse Union*, 22 F.4th 1125 (9th Cir. 2022), and *Grow Michigan v. LT Lender*, 50 F.4th 587 (6th Cir. 2022)).  Petitioners have not yet had the chance to

---

[1] Under Ninth Circuit Rule 27-1(2), counsel for Petitioners conferred with counsel for Lead Plaintiff before filing this motion.  Lead Plaintiff's counsel stated that they do not oppose a submission to the extent it responds to issues raised in the conditional cross-petition, but do oppose a submission to the extent it addresses matters beyond the conditional cross-petition.

1

respond to Lead Plaintiff's argument regarding these cases, and the Court will benefit from considering Petitioners' argument on these issues. Petitioners' proposed reply also will aid the Court by identifying the concessions made by Lead Plaintiff in its Answer and clarifying the issues truly in dispute in this Petition.

Finally, the proposed reply explains that Lead Plaintiff's Answer to the Petition contains a proposed "conditional cross-petition" that should be denied. This Court lacks jurisdiction to consider the issue presented in that cross-petition, and, in any event, the issue does not warrant interlocutory appeal.

For those reasons, Petitioners respectfully request that their motion for leave to file the attached brief be granted.

Dated:  September 5, 2024                Respectfully submitted,[2]

*/s/ John W. Berry*                        */s/ Jeffrey L. Steinfeld*

  John W. Berry                            Jeffrey L. Steinfeld
  John M. Gildersleeve                    James P. Smith
  MUNGER, TOLLES & OLSON LLP               WINSTON & STRAWN LLP
    350 South Grand Avenue                   333 South Grand Avenue
    50th Floor                               38th Floor
    Los Angeles, CA 90071                    Los Angeles, CA 90071
    Telephone:  (213) 683-9100               Telephone:  (213) 615-1700
    John.Berry@mto.com                       JLSteinfeld@winston.com

*Counsel for Petitioners View, Inc.*      *Counsel for Petitioners Howard W.*
*(n/k/a View Operations LLC and f/k/a*    *Lutnick, Paul Pion, Alice Chan, Anshu*
*CF Finance Acquisition Corp. II) and*    *Jain, Robert J. Hochberg, and*
*Rao Mulpuri*                             *Charlotte S. Blechman*

---

[2] Counsel attests that all other parties on whose behalf the filing is submitted concur in the filing's content.

/s/ Ryan Keats
Anna Erickson White
Ryan Keats
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
Telephone: (415) 268-7000
RKeats@mofo.com

*Counsel for Petitioner Vidul Prakash*

# EXHIBIT A

Case No. 24-5051

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

_____

VIEW, INC. F/K/A CF FINANCE ACQUISITION CORP. II; RAO MULPURI; VIDUL
PRAKASH; HOWARD W. LUTNICK; PAUL PION; ALICE CHAN; ANSHU JAIN; ROBERT J.
HOCHBERG; AND CHARLOTTE S. BLECHMAN,
*Petitioners*,

*vs.*

STADIUM CAPITAL LLC;
DAVID SHERMAN,
*Respondents*.

_____

On Petition for Permission to Appeal an Order of the
United States District Court for the Northern District of California
No. 5:21-CV-06374-BLF
Hon. Beth Labson Freeman

_____

## REPLY IN SUPPORT OF PETITION FOR PERMISSION TO APPEAL
## UNDER 28 U.S.C. § 1292(b)

_____

John W. Berry
John M. Gildersleeve
MUNGER, TOLLES & OLSON LLP
  350 South Grand Avenue
  50th Floor
  Los Angeles, CA 90071
  Telephone: (213) 683-9100
  John.Berry@mto.com

*Counsel for Petitioners View, Inc.
(n/k/a View Operations LLC and f/k/a
CF Finance Acquisition Corp. II) and
Rao Mulpuri*

Jeffrey L. Steinfeld
James P. Smith
WINSTON & STRAWN LLP
  333 South Grand Avenue
  38th Floor
  Los Angeles, CA 90071
  Telephone: (213) 615-1700
  JLSteinfeld@winston.com

*Counsel for Petitioners Howard W.
Lutnick, Paul Pion, Alice Chan, Anshu
Jain, Robert J. Hochberg, and Charlotte
S. Blechman*

*Additional counsel listed on next page*

Anna Erickson White
Ryan Keats
MORRISON & FOERSTER LLP
  425 Market Street
  San Francisco, CA 94105
  Telephone:   (415) 268-7000
  RKeats@mofo.com

*Counsel for Petitioner Vidul Prakash*

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ...................................................................................1

ARGUMENT .......................................................................................2

I.    The Petition Should Be Granted ....................................................2

    A.    The Certified Issue Is a Controlling Issue of Law ...............................2

    B.    Substantial Grounds for Disagreement Exist ........................................4

    C.    The Appeal Would Materially Advance Termination of the

        Litigation ...............................................................................7

II.    The Cross-Petition Should be Denied .............................................7

CONCLUSION...................................................................................12

CERTIFICATE OF COMPLIANCE.....................................................13

CERTIFICATE OF SERVICE ............................................................14

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**FEDERAL CASES**

*Brown v. Medtronic, Inc.*,
628 F.3d 451(8th Cir. 2010) ...............................................................5, 6

*In re Cement Antitrust Litig.*,
673 F.2d 1020 (9th Cir. 1982) ................................................................4

*In re Century Aluminum Co. Sec. Litig.*,
729 F.3d 1104 (9th Cir. 2013) ................................................................6

*In re Cinematronics, Inc.*,
916 F.2d 1444 (9th Cir. 1990) ................................................................9

*Couch v. Telescope Inc.*,
611 F.3d 629 (9th Cir. 2010) ................................................................4

*Deutsche Bank Nat. Tr. Co. v. FDIC*,
744 F.3d 1124 (9th Cir. 2014) ................................................................8

*Fleming v. Charles Schwab Corp.*,
878 F.3d 1146 (9th Cir. 2017) ................................................................7

*Grow Michigan, LLC v. LT Lender, LLC*,
50 F.4th 587 (6th Cir. 2022) ................................................................5

*ICTSI Oregon, Inc. v. International Longshore and Warehouse Union*,
22 F.4th 1125 (9th Cir. 2022) .............................................................2, 8

*In re Impax Labs., Inc. Sec. Litig.*,
2008 WL 1766943 (N.D. Cal. 2008) ......................................................3

*In re Infineon Techs. AG Sec. Litig.*,
266 F.R.D. 386 (N.D. Cal. 2009) ..........................................................3

*Lloyd v. CVB Fin. Corp.*,
811 F.3d 1200 (9th Cir. 2016) ........................................................10, 11

*Lloyd v. CVB Fin. Corp.*,
No. 10-cv-6256 (C.D. Cal. 2010), Dkt. No. 11-4 ...............................11

iv

*Loos v. Immersion Corp.*,
762 F.3d 880 (9th Cir. 2014) ................................................................10

*MacPhee v. MiMedx Grp., Inc.*,
73 F.4th 1220 (11th Cir. 2023) ........................................4, 5, 6, 10, 11

*Reese v. BP Expl. (Alaska) Inc.*,
643 F.3d 681 (9th Cir. 2011) ..........................................................9, 10

*Taylor v. KeyCorp.*,
680 F.3d 609 (6th Cir. 2012) ..................................................................5

*Yamaha Motor Corp. U.S.A. v. Calhoun*,
516 U.S. 199 (1996)................................................................................8

**FEDERAL STATUTES**

28 U.S.C. § 1292(b) ...........................................................1, 5, 7, 8, 9, 10

v

## INTRODUCTION

Lead Plaintiff's Answer and Conditional Cross-Petition (the "Answer") further underscores the need for this Court's interlocutory review of the Article III standing issue presented in the petition for permission to appeal pursuant to 28 U.S.C. § 1292(b) (the "Petition"). Lead Plaintiff concedes that this Court has never addressed the certified legal question and that its resolution would materially advance the termination of the litigation.

Contrary to what Lead Plaintiff argues, the certified issue is a question of law because it asks this Court to resolve whether any lead plaintiff without a viable loss-causation theory can have Article III standing. That is a legal question that does not require any examination of the factual allegations in this case. And although Lead Plaintiff cites cases about standing issues in non-securities contexts, decisions in securities cases reflect substantial grounds for disagreement on the certified issue. The lack of clear guidance for district courts on that legal issue carries far-reaching implications for securities cases in the Ninth Circuit.

Finally, Lead Plaintiff's "conditional cross-petition" challenging the district court's loss-causation analysis should be denied. The loss-causation issue is not fairly included in the order certified under Section 1292(b). And even if this Court could exercise jurisdiction over that issue, the Court should decline to do so.

## ARGUMENT

## I.    The Petition Should Be Granted

### A.    The Certified Issue Is a Controlling Issue of Law

As the district court correctly recognized, whether a lead plaintiff who lacks a viable loss-causation theory can still have Article III standing to bring securities-fraud claims is "a pure question of law that does not depend on a material dispute of fact" and "is controlling" in this case.  Certification Order 2.

Lead Plaintiff incorrectly claims that this issue is factual, not legal.  Answer 12-14.  But Petitioners do not ask this Court to re-examine how the Article III inquiry applies to the allegations in this case.  Rather, Petitioners ask this Court to examine, for the first time, whether a lead plaintiff with no viable loss-causation theory can ever show an injury that is traceable and redressable.

In arguing that the issue here is factual, Lead Plaintiff cites and quotes a distinguishable decision: *ICTSI Oregon v. International Longshore and Warehouse Union*, 22 F.4th 1125 (9th Cir. 2022).  Answer 13.  In that case about a labor dispute at a port, the district court certified whether the plaintiff port operator had "entangled itself" in defendant's "dispute with the Port" so as to lose "its status as a 'secondary employer.'"  *ICTSI*, 22 F.4th at 1130.  As this Court explained, that was an issue "of fact, not 'of law'" because it required examination of the "circumstances of [the] case."  *Id.* at 1132.  The question here requires no such examination; it asks whether one legal conclusion (absence of Article III standing)

2

necessarily follows when there already exists another legal conclusion (absence of loss causation).

Lead Plaintiff also argues that the other district court decisions in this Circuit holding that plaintiffs without loss causation lacked standing reached that holding only by applying the law to "different facts." Answer 13-15 (discussing *In re Impax*, 2008 WL 1766943 (N.D. Cal. 2008), and *In re Infineon*, 266 F.R.D. 386 (N.D. Cal. 2009)). But the *Impax* and *Infineon* decisions are factually similar to this case. In both, lead plaintiffs lacked viable loss causation theories because they sold their stock before the alleged truth was revealed. *Impax*, 2008 WL 1766943, at *6-7; *Infineon*, 266 F.R.D. at 398. Accordingly, when those decisions, unlike the decision below, concluded that lead plaintiffs lacked standing, they necessarily applied a different legal standard for Article III standing than the court below did, because they reached different legal conclusions on essentially the same facts. *Impax* and *Infineon* thus reinforce the conclusion that a legal issue is at stake here.

Finally, Lead Plaintiff does not dispute that the issue presented here is a controlling one. Answer 12-15. That is because a successful appeal reversing the district court's conclusion that Lead Plaintiff has standing would "require dismissal of the entire action," Certification Order 2, and would undeniably "materially affect the outcome of litigation," *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (9th Cir. 1982).

### B. Substantial Grounds for Disagreement Exist

Lead Plaintiff argues that there are no substantial grounds for disagreement because, under Supreme Court and Ninth Circuit precedent, a plaintiff can show an injury for purposes of Article III standing even if it cannot allege loss causation. Answer 10, 16-17. But Lead Plaintiff cites no opinion from this Court or the Supreme Court that has addressed the interplay of loss causation and Article III standing. Nor did the district court identify any on-point binding authority. Certification Order 3. That is *exactly* why the district court "struggled in analyzing the question." *Id*. As the district court noted, while its "analysis [in the Reconsideration Order] relied on cases that stand for the general proposition that the 'fairly traceable' element of Article III standing is distinct from a showing of proximate cause," those "authorities did not address the interplay between loss causation and Article III standing." *Id.* In other words, the issue presented is a "novel and difficult question[] of first impression" in this Circuit, which establishes substantial grounds for disagreement. *Couch v. Telescope*, 611 F.3d 629, 633 (9th Cir. 2010).

Lead Plaintiff points to the Eleventh Circuit's ruling in *MacPhee v. MiMedx Group*, 73 F.4th 1220 (11th Cir. 2023), to argue otherwise. To be sure, *MacPhee* did hold that a securities-fraud plaintiff who fails to plead loss causation can nevertheless still have Article III standing to sue. *Id.* at 1240. But whether that

holding in *MacPhee* was correct or not is not at issue in this Petition; the only issue is whether this Court should permit an appeal under Section 1292(b). The Petition presents the ideal opportunity for this Court to address the question considered in *MacPhee* and provide guidance for courts across the Ninth Circuit.

Lead Plaintiff also suggests that other courts of appeals are in alignment with *MacPhee*. Answer 17-18. For one, it argues that the Sixth Circuit's ruling in *Taylor v. KeyCorp.*, 680 F.3d 609 (6th Cir. 2012), is not contrary to *MacPhee*. But unlike *MacPhee*, *Taylor* held that a plaintiff that fails to allege stock-related losses caused by the defendants lacks "Article III standing" because it "suffer[ed] no 'actual injury.'" *Id.* at 613 (ERISA class action). And contrary to Lead Plaintiff's assertion, the Sixth Circuit never "rejected" *Taylor*, Answer 5, in *Grow Michigan v. LT Lender*, 50 F.4th 587 (6th Cir. 2022). *Grow Michigan*, a RICO case brought by a creditor on behalf of a company that defaulted on its loan, does not address whether Article III standing can exist when there are no losses from stockholdings and does not so much as cite *Taylor*, let alone engage with its reasoning. 50 F.4th at 592.

Lead Plaintiff also cites *Brown v. Medtronic*, 628 F.3d 451(8th Cir. 2010), as supportive of *MacPhee*. Answer 19-20. But Lead Plaintiff acknowledges, *id.* at 20 n.6, that *Brown* applies a different standing rule than *MacPhee*. In *Brown*, the court dismissed some of the plaintiff's claims for lack of standing because the

5

plaintiff had sold his shares before one corrective disclosure was issued, and therefore suffered no traceable or redressable loss, and "no constitutional injury." *Id.* at 458, 459.[1]

Lead Plaintiff likewise fails to rebut Petitioners' showing of substantial grounds for disagreement on whether a plaintiff with no viable loss-causation theory has a redressable injury for Article III standing. Petition 17. Although Lead Plaintiff claims that *Brown* is consistent with *MacPhee* as to redressability, Answer 19, Lead Plaintiff ignores that *Brown* held that it is legal error to "eliminate the redressability requirement" for Article III standing and dismissed one set of claims for lack of a traceable injury that could be redressed. *Brown*, 628 F.3d at 457, 458. That puts *Brown* in tension with *MacPhee* because the latter court assumed redressability without analysis. *See MacPhee*, 73 F.4th at 1240, 1248; Petition 17. And Lead Plaintiff's main case, *In re Century Aluminum*, 729 F.3d 1104 (9th Cir. 2013), does not help its cause. That case stands for the uncontroversial proposition that a plaintiff who holds its shares until after "the truth was revealed" has suffered a redressable injury and so has Article III standing. *Id.* at 1109. *Century* does not address the distinct question of whether a

---

[1] This Court has not accepted Lead Plaintiff's suggestion that a securities-fraud plaintiff is injured for standing purposes when it first purchases shares. *Compare In re Century Aluminum*, 729 F.3d 1104, 1109 (9th Cir. 2013) (Article III "injury-in-fact" alleged when "value of [plaintiff's] shares declined"), *with* Answer 11 (citing D.C. district-court decision).

plaintiff, who lacks a viable loss-causation theory because it sold its shares before "the truth was revealed," could have standing despite having suffered no redressable injury.

Finally, Lead Plaintiff cites *Fleming v. Charles Schwab*, 878 F.3d 1146 (9th Cir. 2017), to argue that there is no disagreement over the certified issue, but *Fleming* is easily distinguishable. In that state-law case involving challenges to Charles Schwab's order-routing practices, the plaintiffs alleged redressable harm because they indisputably had suffered cognizable losses, even if they could not identify "particular trades." *Id.* at 1151. That is a far cry from this case, where Lead Plaintiff suffered no redressable harm at all.

### C. The Appeal Would Materially Advance Termination of the Litigation

Lead Plaintiff's Answer never responds to Petitioners' argument that "[r]esolving the controlling question of law presented in this case would 'materially advance the termination of the litigation.'" Petition 12. Lead Plaintiff thus appears to concede the third prong of Section 1292(b), as it must; were this Court to agree that Lead Plaintiff lacks standing, the entire case would be dismissed.

## II. The Cross-Petition Should be Denied

Lead Plaintiff's conditional cross-petition should be denied because it suffers a threshold jurisdictional defect: it seeks to raise issues not resolved in the

7

order certified under Section 1292(b). This Court has "appellate jurisdiction" under Section 1292(b) only over "the *order* certified to the court of appeals." *Yamaha Motor v. Calhoun*, 516 U.S. 199, 205 (1996). Although this Court *may* consider "any question within the four corners of the certified order," *ICTSI*, 22 F.4th at 1132, the Court "may *not* reach beyond the certified order to address other orders made in the case," *Yamaha*, 516 U.S. at 205. "[R]eview of issues not included in the certified order would obliterate the distinction between interlocutory appeals and appeals after final judgment and would encourage circumvention of the conventional appeals process." *Deutsche Bank Nat. Tr. v. FDIC*, 744 F.3d 1124, 1134 (9th Cir. 2014).

Lead Plaintiff nonetheless asks this Court to review "[w]hether the district court erred when it held that Lead Plaintiff had not sufficiently plead loss causation" in an order that came after the Reconsideration Order. Answer 21. But the Reconsideration Order, which is the only order certified for appeal, did not resolve the loss-causation issue. To the contrary, the district court stressed in the Reconsideration Order that it was "not necessary" "to reach" whether loss causation could be established in order "to determine whether Stadium Capital has Article III standing." Reconsideration Order 10. The Reconsideration Order does not analyze the central issue in the conditional cross-petition: whether the loss-causation analysis in *MacPhee* is inconsistent with this Court's opinions. Because

8

the loss-causation issue falls outside the "four corners" of the Reconsideration

Order, the Court lacks jurisdiction under Section 1292(b) to consider it. *ICTSI*, 22

F.4th at 1132.

Lead Plaintiff argues that appellate jurisdiction is nevertheless proper

because the loss-causation issue was "material" to the district court's standing

analysis in the Reconsideration Order. Answer 21-22. But that argument fails too.

In limited circumstances, this Court may consider material issues beyond the

certified order on a Section 1292(b) appeal, such as when "reconsideration of a[n]

[earlier] ruling material to an order provides grounds for *reversal* of the entire

order" certified for appeal. *In re Cinematronics*, 916 F.2d 1444, 1449 (9th Cir.

1990) (emphasis added). But considering the loss-causation issue would not

provide grounds for reversal of the Reconsideration Order. Lead Plaintiff does not

seek reversal of the Reconsideration Order; it seeks to uphold that order, which

held that the standing analysis precedes any analysis of loss causation.

Reconsideration Order 8.

This Court also should deny the conditional cross-petition for two additional

reasons. *See Reese v. BP Expl.*, 643 F.3d 681, 690 (9th Cir. 2011) (Section

1292(b) review is discretionary). First, Lead Plaintiff never sought reconsideration

of the district court's loss-causation analysis below, never sought to certify any

loss-causation issue under Section 1292(b), and never raised any such issue when

opposing Petitioners' certification motion before the district court. Had Lead Plaintiff thought that the district court's loss-causation analysis was incompatible with existing Ninth Circuit law, it could have sought reconsideration of that issue when it sought reconsideration of the district court's standing analysis. But it did not. *See* Dkt. No. 203. That Lead Plaintiff "did not find the district court's alleged error" so "plain as to seek reconsideration counsels against" review now. *Reese*, 643 F.3d at 689.

Second, Lead Plaintiff fails to argue that the question presented in its cross-petition satisfies the requirements of Section 1292(b). That is because it does not. For example, the loss-causation question that Lead Plaintiff presents will not materially advance the litigation because a holding that Lead Plaintiff *has* alleged loss causation would only prolong the action's resolution.

Lead Plaintiff resorts instead to a *merits* argument, by contending that the district court erred in relying on *MacPhee*, 73 F.4th at 1248, for loss causation. Answer 21-22. But that argument does not satisfy any Section 1292(b) requirement and is, in any event, wrong. The district court's loss-causation analysis faithfully applied this Court's caselaw to determine whether this lead plaintiff's complaint adequately alleged loss causation. *See* Dkt. 200 at 11-16; Dkt. 214 at 13-17, 29-30; *see Loos v. Immersion*, 762 F.3d 880, 890 (9th Cir. 2014) (announcement of investigation without subsequent disclosure of wrongdoing is

not corrective disclosure); *Lloyd v. CVB Fin.*, 811 F.3d 1200, 1210 (9th Cir. 2016) (announcement of investigation can form basis for claim if complaint alleges subsequent disclosure confirming market correctly analyzed announcement). The district court then properly considered *MacPhee* as persuasive authority because that case dealt with the exact factual situation presented here: a plaintiff that held stock when an investigation was announced but sold that stock before the investigation concluded and its results were made public. *See MacPhee*, 73 F.4th at 1248.

Lead Plaintiff argues that *MacPhee*'s loss-causation analysis and this Court's decision in *Lloyd* are inconsistent because *Lloyd* does not require a plaintiff to hold shares at the time the results of an investigation are announced whereas *MacPhee* does. Answer 22-23. But that is also incorrect. *Lloyd* does not say anything about whether a plaintiff must hold stock when the results of an investigation are announced can establish loss causation, because that issue was not before the Court. And *MacPhee* did not, as Lead Plaintiff suggests, reject *Lloyd*'s analysis in reaching its conclusion. Rather, in *MacPhee*, the Eleventh Circuit concluded that it did not need to even address the question presented in *Lloyd*—whether disclosure of an investigation could be actionable—because the lead plaintiff had sold its stock "months before" the defendants' alleged "wrongdoing" was "revealed." *MacPhee*, 73 F.4th at 1248 n.12.

11

# CONCLUSION

The petition should be granted and the conditional cross-petition should be denied.

DATED:  September 5, 2024

Respectfully submitted,

/s/ John W. Berry
  John W. Berry
  John M. Gildersleeve
  MUNGER, TOLLES & OLSON LLP
    350 South Grand Avenue
    50th Floor
    Los Angeles, CA 90071
    Telephone:  (213) 683-9100
    John.Berry@mto.com

*Counsel for Petitioners View, Inc. (n/k/a View Operations LLC and f/k/a CF Finance Acquisition Corp. II) and Rao Mulpuri*

/s/ Ryan Keats
  Anna Erickson White
  Ryan Keats
  MORRISON & FOERSTER LLP
    425 Market Street
    San Francisco, CA 94105
    Telephone:  (415) 268-7000
    RKeats@mofo.com

*Counsel for Petitioner Vidul Prakash*

/s/ Jeffrey L. Steinfeld
  Jeffrey L. Steinfeld
  James P. Smith
  WINSTON & STRAWN LLP
    333 South Grand Avenue
    38th Floor
    Los Angeles, CA 90071
    Telephone:  (213) 615-1700
    JLSteinfeld@winston.com

*Counsel for Petitioners Howard W. Lutnick, Paul Pion, Alice Chan, Anshu Jain, Robert J. Hochberg, and Charlotte S. Blechman*

12

## CERTIFICATE OF COMPLIANCE

1. The Motion complies with the length limits permitted by Ninth Circuit Rules 27-1(1)(d) and 32-3(2) because it includes 367 words, excluding the portions exempted by Fed. R. App. P. 32(f). The proposed Reply complies with the length limits permitted by Ninth Circuit Rules 5-2(b) and 32-3(2) because it includes 2566 words, excluding the portions exempted by Fed. R. App. P. 32(f).

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this document was prepared in a proportionally spaced typeface using Microsoft Word in 14-point font.


DATED: September 5, 2024       */s/ John W. Berry*
                                     John W. Berry
                                     *Counsel for Petitioners View, Inc. and Rao Mulpuri*

## CERTIFICATE OF SERVICE

I hereby certify that on September 5, 2024, I electronically filed the foregoing document with the United States Court of Appeals for the Ninth Circuit by using the CM/Dkt. system. I further certify that I caused to be served the foregoing petition by both third party commercial carrier for delivery within 3 calendar days and via email on all parties required to be served, including:

Laurence D. King
Blair E. Reed
**KAPLAN FOX & KILSHEIMER LLP**
1999 Harrison Street, Suite 1560
Oakland, CA 94612
Telephone: 415-772-4700
Facsimile: 415-772-4707
Emails: *lking@kaplanfox.com*
      *breed@kaplanfox.com*

Frederic S. Fox
Donald R. Hall
Jason A. Uris
**KAPLAN FOX & KILSHEIMER LLP**
800 Third Avenue, 38th Floor
New York, NY 10022
Telephone: 212-687-1980
Facsimile: 212-687-7714
Emails: *ffox@kaplanfox.com*
      *dhall@kaplanfox.com*
      *juris@kaplanfox.com*

*Counsel for Lead Plaintiff Stadium Capital LLC*

DATED: September 5, 2024

        */s/ John W. Berry*
        John W. Berry
        *Counsel for Petitioners View, Inc. and*
        *Rao Mulpuri*